UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

R.T.G. FURNITURE CORP.,

    Plaintiff,

v.                                                    CASE NO.:

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA,

    Defendant.
_____/

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff R.T.G. Furniture Corp. ("Rooms To Go"), by and through its attorneys, and for its complaint against Defendant, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), respectfully states as follows:

**NATURE OF THE ACTION**

1. This is a breach of contract action arising from National Union's refusal to honor its insurance policy by reimbursing Rooms To Go for defense costs incurred in defending a putative class action lawsuit.

2. On June 1, 2017, Robert Blobner commenced a putative class action against Rooms To Go in the Middle District of Florida styled *Robert Blobner v. Artemis Marketing Corp. d/b/a Rooms To Go, Ormond Atlantic Corp., Roomstogo.com, Inc., and R.T.G. Furniture Corp.* (the "Blobner Action"). The gravamen of the Blobner Action – in which Rooms To Go ultimately prevailed on summary judgment – was that Rooms To

Go allegedly marketed and sold defective "bonded leather" furniture that was not suitable for Florida consumers.

3.  Rooms To Go promptly tendered the lawsuit to National Union under a management liability insurance policy that responded for all claims between June 30, 2016, and June 30, 2017. Rooms To Go requested that National Union acknowledge its obligation to defend and indemnify Rooms To Go in the Blobner Action. National Union instead denied coverage, in breach of the insurance contract.

4.  Abandoned by its insurer, Rooms To Go acted as a reasonable self-insured and proceeded to mount its own legal defense by engaging counsel from Hunton & Williams LLP (now Hunton Andrews Kurth LLP) ("Hunton") and Bondurant Mixson & Elmore LLP ("Bondurant") – two firms with skilled class action defense counsel who had previously successfully collaborated on Rooms To Go's behalf.

5.  Months after breaching the insurance contract, National Union decided that its coverage denial was in error, admitted that the Blobner Action presented the possibility of coverage under the policy, and agreed to advance a defense. The insurer maintained, however, that it was not responsible for all of Rooms To Go's defense costs and was entitled to "allocate" (at its own discretion) between what it asserted were covered and uncovered claims in the Blobner Action. Several months later, National Union also unilaterally decided that Rooms To Go did not need counsel from both Hunton and Bondurant and refused to pay any defense costs for more than one firm. It reached this conclusion even though Rooms To Go had relied on the two firms for several months without any objection by National Union, and despite no evidence (or

even suggestion) that the two firms duplicated effort or were otherwise incurring attorneys' fees in an unreasonable manner or amount.

6. Rooms To Go eventually emerged successful in the Blobner Action, defeating class certification and winning summary judgment nearly three years after it began. But in obtaining that success, Rooms To Go was forced to incur a substantial sum in defense costs. National Union has reimbursed only a fraction of that amount on the purported bases that (1) it is entitled to "allocate" defense costs and need not pay for the entire defense, and (2) it never consented to a defense by more than one law firm. Both positions are unsupported by the policy language and are contradicted by Florida law.

7. National Union has indisputably breached the insurance policy and Rooms To Go is entitled to full reimbursement of its defense costs incurred in the Blobner Action.

**PARTIES**

8. Plaintiff, R.T.G. Furniture Corp., is a Florida corporation with its principal place of business at 11540 E. U.S. Highway 92, Seffner, Florida, 33584. R.T.G. Furniture Corp. is the named insured under the insurance policy issued by National Union.

9. Defendant, National Union Fire Insurance Company of Pittsburgh, PA, is a Pennsylvania corporation with its principal place of business in New York, New York. National Union is authorized to sell insurance in the state of Florida and, on information and belief, is actively engaged in the business of selling insurance both in Hillsborough

County and throughout the state of Florida. National Union issued the subject insurance policy to Rooms To Go at Rooms To Go's principal address in Seffner, Florida.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 exclusive of interest and costs, and the parties are citizens of difference states.

11. This Court has personal jurisdiction over the Defendant because National Union: (1) is an authorized insurer in the state of Florida, (2) generally transacts business throughout the state of Florida, and (3) contracted to insure a Florida corporation with its principal place of business in this judicial district.

12. Venue is properly placed under 28 U.S.C. § 1391, as this is a diversity action in which a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Namely, the subject insurance policy was issued to Rooms To Go in this judicial district, the Blobner Action was litigated in this judicial district, and National Union breached its contractual obligations by failing to defend Rooms To Go in this judicial district.

## FACTS

### National Union Wrongfully Denies Coverage

13. Robert Blobner commenced the Blobner Action on June 1, 2017, by filing a complaint in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida. A copy of the original complaint in the Blobner Action is

attached as **Exhibit "A."** Rooms To Go promptly tendered the lawsuit to National Union and requested coverage under its management liability insurance policy.

14. On July 17, 2017, National Union improperly issued an outright coverage denial even though the insurance policy covered the exact type of claim brought by Blobner. The insurer maintained that it had no obligation to fund Rooms To Go's defense or make any indemnity payment if Rooms To Go was ultimately found liable. A copy of National Union's July 17, 2017 coverage denial is attached as **Exhibit "B."**[1]

15. Abandoned by National Union under the insurance policy, Rooms To Go was forced to take up and pay for its own defense in the Blobner Action. Rooms To Go retained a defense team comprising the law firms of Hunton and Bondurant. Both firms offered highly skilled class-action counsel with specialized skills who had previously collaborated on Rooms To Go's behalf. The need for experienced counsel was paramount, as Blobner purported to represent a broad class that was seeking substantial damages.

16. In an effort to convince National Union that its coverage denial was improper, Rooms To Go also engaged insurance coverage counsel and exchanged various correspondence with National Union in the months following the insurer's July 17, 2017 denial.

17. After several months, National Union eventually reversed course and reluctantly acknowledged that Blobner's complaint presented the possibility of coverage under the operative insurance policy. This reversal came after Rooms To Go had

---

[1] Certain information that is immaterial to Rooms To Go's claims has been redacted from the correspondence.

defended itself for four months and hired defense counsel necessary for that task. On October 17, 2017, National Union wrote that "[u]pon reconsideration, National Union acknowledges potential coverage for Count V (unjust enrichment)." Notwithstanding this admission, National Union still refused to fully fund Rooms To Go's defense under the policy. Instead, the insurer asserted that it was entitled to allocate defense costs "[b]ecause only one of six causes of action in the Complaint is potentially covered." National Union maintained this position even though (1) the policy did not provide for such an allocation, and (2) the defense costs were impossible to segregate by count because the various counts were simply different theories of recovery based on the same set of allegations and, thus, the defense work was being done in response to all counts. Further, despite the fact that National Union's coverage denial breached the policy and forced Rooms To Go to mount its own defense, the insurer asserted that its consent was required under the policy for representation by both Hunton and Bondurant.

18. Rooms To Go subsequently attempted to persuade National Union to reverse course and provide a full defense as required under the policy. Rooms To Go engaged in a protracted exchange with National Union to highlight that neither of these purported coverage positions was supported by the insurance policy or Florida law.

19. With respect to an "allocation" of defense costs between covered and uncovered claims, Rooms To Go's insurance policy creates no such right. Moreover, Florida law compels an insurer to fund the insured's entire defense so long as there is a potential for coverage – which National Union had already acknowledged.

20. Further, National Union lost its ability to rely on the policy's "consent" requirement for defense counsel when it breached the policy by denying coverage. Florida law is well-settled that once an insurer wrongfully denies coverage, the power shifts to the insured to control its own defense and the carrier becomes responsible for the reasonable defense costs incurred. Even if National Union could have relied on the "consent" requirement in the policy that it breached, National Union could not "unreasonably withhold consent" for Rooms To Go's choice of counsel under the policy.

21. National Union elected to ignore the policy language and Florida law. On May 8, 2018, National Union wrote that it had unilaterally devised an allocation: it would pay only 25% of Hunton's reasonable and necessary defense costs. Worse, National Union further advised that it would pay *none* of the defense costs incurred by Bondurant because it was unreasonable and unnecessary for Rooms To Go to retain two firms. National Union reached this conclusion notwithstanding the fact that (1) the insurer abandoned Rooms To Go and left it in control of its own defense for almost a year, and (2) Rooms To Go determined that it was reasonable and necessary to engage two firms even when it appeared that Rooms To Go would have to fund the entirety of the defense from its own pocket.

22. Rooms To Go reserved its right to later contest National Union's refusal to pay for more than one law firm and continued to engage the carrier regarding its purported right to allocate defense costs. Rooms To Go's protracted efforts to convince the insurer that it was responsible for funding the entirety of Rooms To Go's defense ultimately proved unsuccessful.

23. The Blobner Action was removed from state court to the U.S. District Court for the Middle District of Florida, and multiple amended complaints were later filed.

24. Every iteration of Blobner's complaint contains a cause of action for Unjust Enrichment.

25. Even though the insurer has acknowledged the possibility of coverage for Unjust Enrichment, it has refused to fully reimburse Rooms To Go for its defense costs.

26. National Union later unilaterally changed its "allocation," agreeing to reimburse Rooms To Go for (1) 30% of Hunton's defense costs before the insurer received notice of Blobner's First Amended Complaint on October 2, 2018, and (2) 40% of Hunton's defense costs thereafter. National Union has refused to reimburse the remainder of the reasonable and necessary defense costs paid by Rooms To Go.

27. Through the combined efforts of Hunton and Bondurant (which National Union deemed unreasonable and unnecessary), Rooms To Go defeated Blobner's attempt to secure class certification and prevailed in the Blobner Action when the Court granted summary judgment in Rooms To Go's favor. Despite its victory on the merits, Rooms To Go was forced to incur significant attorneys' fees and costs over nearly three years to avoid the substantial damages sought by Blobner. Notably, the total fees and costs came to *less* than the amount that Rooms To Go had estimated and budgeted for National Union.

28. To date, National Union has refused to reimburse Rooms To Go for the full amount of its defense costs incurred in connection with the Blobner Action.

**The Available Coverage under Rooms To Go's Insurance Policy**

29.    National Union issued Rooms To Go a PrivateEdge Plus insurance policy including Directors, Officers, and Private Company Liability coverage with a Policy Period from June 30, 2016, through June 30, 2017 (the "Policy"). It is a claims-made policy, meaning that it responds for all claims first made against Rooms To Go within the Policy Period. The Policy carries a $10 million limit of liability, inclusive of defense costs. A copy of the Policy is attached as **Exhibit "C."**[2]

30.    Insuring Agreement 1(B) provides Private Company Insurance, which states:

> This D&O Coverage Section shall pay the Loss of the Company arising from a
>
> (i)    Claim made against the Company, or
>
> (ii)   Claim made against an Individual Insured,
>
> for any Wrongful Act . . . The Insurer shall, in accordance with and subject to Clause 7 of this D&O Coverage Section, advance Defense Costs of such Claim prior to its final disposition.

Policy, D&O Coverage Section, § 1(B). All capitalized words and phrases are specifically defined by the Policy.

31.    To implicate coverage, a Claim must be made against the Company, which is defined as Rooms To Go. Policy, General Terms and Conditions, § 2(b).

---

[2] Certain information that is immaterial to Rooms To Go's claims has been redacted from the Policy.

32. A Claim includes, in relevant part, a "civil . . . proceeding for monetary or non-monetary relief which is commenced by service of a complaint or similar proceeding." Policy, D&O Coverage Section, § 2(b)

33. A Claim must be for a Wrongful Act, which, with respect to Rooms To Go, means "any breach of duty, neglect, error, misstatement, misleading statement, omission or act by a Company." Policy, D&O Coverage Section, § 2(cc).

34. The Loss covered by the Policy includes "damages, judgments, settlements, pre-judgment and post-judgment interest, Crisis Management Loss and Defense Costs." Policy, D&O Coverage Section, § 2(u).

35. Defense Costs include, in relevant part, "the reasonable and necessary fees, costs and expenses consented to by the Insurer . . . resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured." Policy, D&O Coverage Section, § 2(k). Section 7 of the D&O Coverage provides the additional qualification that the "insurer shall not unreasonably withhold any consent required under this D&O Coverage Section[.]" Policy, D&O Coverage Section, § 7.

36. National Union has admitted that the Blobner Action filed against Rooms To Go constitutes a Claim for a Wrongful Act that triggers the Policy's insuring agreement.

**National Union's Obligation to Fully Reimburse Rooms To Go for its Defense Costs**

37. The Policy's operative insuring agreement requires National Union to advance Rooms To Go's defense costs in connection with the Blobner Action.

38. National Union's duty to advance defense costs is determined by the same standard governing the "duty to defend" under Florida law.

39. Under governing authority, if a complaint against the insured contains any allegations that present the possibility of coverage under the insurance policy, the insurer is obligated to defend the entire suit.

40. National Union has already acknowledged in its October 17, 2017 correspondence that Blobner's Unjust Enrichment count against Rooms To Go presented the possibility of coverage under the Policy, which is all that is necessary to trigger a "duty to defend" the entire Blobner Action.

41. The Policy does not grant National Union the right to allocate defense costs between covered and uncovered claims.

42. The Policy does not grant National Union the right to unreasonably withhold consent to reasonable and necessary defense costs.

43. No other exclusions or limitations apply to prevent Rooms To Go from recovering the entirety of its defense costs in connection with the Blobner Action.

44. Under Florida law, National Union's wrongful coverage denial conferred Rooms To Go the right to control its own defense and made the insurer responsible for the reasonable defense costs incurred.

45. All of Rooms To Go's defense costs were reasonable and necessary in light of the complexity, allegations, and potential damages associated with the Blobner Action.

46. Rooms To Go has paid the entirety of Hunton's and Bondurant's defense costs associated with the Blobner Action.

### Compliance with All Conditions Precedent

47. Rooms To Go has satisfied all of the applicable terms, conditions, and other requirements of the Policy. Alternatively, compliance with the applicable terms, conditions, and other requirements in whole or in part has been waived, excused, or is unnecessary for other reasons.

### Retention of Counsel

48. Rooms To Go has retained the law firm of Hunton Andrews Kurth LLP and its attorneys to represent Rooms To Go in this action and has agreed to pay it reasonable attorneys' fees, plus all expenses incurred, for its services.

### COUNT I – BREACH OF CONTRACT

49. Rooms To Go re-alleges the preceding paragraphs as if fully set forth herein.

50. <u>The Contract:</u>  At all material times, Rooms To Go was insured under the Policy, which is a binding, valid, and enforceable contract under Florida law.

51. The defense costs incurred by Rooms To Go in connection with the Blobner Action are covered under the Policy. None of the terms, provisions, conditions, or exclusions in the Policy apply to bar coverage.

52. <u>Breach:</u>  National Union, through the acts of its agents, representatives, and/or employees, failed to perform its duties and/or obligations under the Policy and thus breached the contract by its acts or omissions as alleged herein, including without

limitation, its initial coverage denial and subsequent failure and refusal to reimburse Rooms To Go for the full amount of its defense costs in connection with the Blobner Action.

53. National Union has breached its duties and/or obligations under the Policy by failing to honor its duty to advance Rooms To Go's defense costs in connection with the Blobner Action and failing to reimburse Rooms To Go for the full amount of its defense costs through the Blobner Action's conclusion.

54. <u>Damages</u>: As a direct, proximate, and natural result of National Union's breaches, Rooms To Go has been deprived of the benefits due under the Policy.

WHEREFORE, Plaintiff R.T.G. Furniture Corp. demands judgment against Defendant, National Union Fire Insurance Company of Pittsburgh, PA, for damages, pre- and post-judgment interest, attorneys' fees pursuant to Fla. Stat. § 627.428, costs, and any further relief this Court deems equitable, just, and proper.

## **JURY DEMAND**

Rooms To Go hereby demands trial by jury.

| | |
|---|---|
| Dated:   May 22, 2020 | HUNTON ANDREWS KURTH LLP |

*/s/ Walter J. Andrews*
Walter J. Andrews - Trial Counsel
Fla. Bar No. 84863
Cary D. Steklof
Fla. Bar No. 86257
HUNTON ANDREWS KURTH LLP
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Tel: (305) 810-6407
Facsimile: (305) 810-2460
wandrews@HuntonAK.com
csteklof@HuntonAK.com

*Attorneys for Plaintiff, R.T.G Furniture Corp.*
